_|DECUIR, Judge.
This appeal arises out of a suit for medical malpractice for wrongful death by Catherine Havard and Robbie Langley, grandmother and mother respectively, of the decedent, Kasie Nicole Parker, against The Children’s Clinic of Southwest Louisiana, Inc. After a trial on the merits, the trial judge assigned written reasons and rendered judgment apportioning 80% fault to defendant and 20% fault to Catherine Havard. Damages were awarded in the total amount of $168,263.11 to Robbie Langley and $15,000.00 to Catherine Havard, subject to the allocation of fault. The damages were awarded as follows:
In Favor of Robbie Langley:
Survival Action $ 15,000.00
Wrongful Death 125,000.00
Damages Caused by Injury to Another 10,000 .00
^Medical Expenses 16,559.11
Funeral and Headstone 1,704.00
$168,263.11
In Favor of Catherine Havard:
Damages Caused by Injury to Another $ 15,000.00
The Children’s Clinic of Southwest Louisiana, Inc. (Children’s Clinic) appeals, contending that the trial court erred in improperly applying an evidentiary rule and in failing to assign any fault to Robbie Langley, the decedent’s mother. Plaintiffs appeal, contending that the trial court erred in assigning fault to Catherine Havard and in awarding insufficient damages.
Facts
Kasie Parker died at the age of 13 on August 29, 1991, from the effects of diabetic ketoacidosis, allegedly as a result of defendant’s negligence. A medical review panel was convened. The panel issued the following decision:
It’s the opinion of the panel that there’s a material issue of fact not requiring expert opinion bearing on the liability for consideration by the court. Specifically, the issue of fact relates to the telephone conversation on the early afternoon hours of August 28th, in which the grandmother *1180 caretaker states that she related to the office nurse at The Children’s Clinic that her child was vomiting but also a diabetic and in which the records from the clinic relates that the phone conversation recorded by the nurse made no mention of the diabetes. We feel that this fact is important because it was probably of a significant issue in the eventual outcome of this child’s condition. Although, at this point in time, we don’t have enough information to go any further to whether or not the grandmother or the nurse is accurate in their recollection — at least the records from the nurse accurate [sic] and the recollection. So, that’s our position.
Kasie lived with her mother and grandmother. Langley was only 15 years old at the time of Kasie’s birth. Havard was Ka-sie’s legal guardian from the time she was 13 months old to the time of her death.
[¡The record reflects that Kasie vomited in the early morning on August 28,1991. Kasie was diagnosed in 1988 as an insulin dependent diabetic, whose insulin maintenance required two shots of insulin a day, morning and evening. The child’s grandmother, Catherine Havard, withheld the child’s morning dosage after the child’s early morning episode of vomiting. According to Havard, her decision was based on a previous episode when Kasie became hypoglycemic after receiving insulin when vomiting. The child did not attend school. Both her mother and grandmother left for work. According to her testimony, Havard instructed Kasie to eat something and self-administer her shot. Later in the morning, Havard talked to Kasie and learned that she had vomited again. Langley testified that Kasie called her at work at noon and advised that she had again vomited. Langley then asked her mother, Havard, to go home to check on Kasie.
Havard testified that upon arriving at home, she learned Kasie had still not eaten. According to Havard, she then called the Children’s Clinic at approximately 12:30 p.m. The call was received by Debra Fontenot, an LPN. According to the nurses’ call records, the call was received at 1:15 p.m. Havard testified she asked for Dr. Richard Calhoun and was advised by Fontenot that he was not in. Havard testified that she told the nurse that Kasie was a diabetic who was vomiting and had not had her insulin shot that morning. According to Havard, she asked for suppositories for Kasie to stop the vomiting. Havard testified that the nurse advised her she would look at the child’s chart and send Phenegran suppositories.
Fontenot, on the other hand, testified that the caller did not tell her that Kasie was diabetic or had not had her insulin. This information is not recorded in the nurses’ call record. As the trial court notes in reasons for judgment, the call record does not reflect that Havard asked for Dr. Calhoun, but Fon-tenot acknowledged in her testimony ^that the caller asked for him, although she claimed no other independent recollection of the August 28, 1991 call, other than the nurses’ call record and her earlier deposition.
Phenegran was prescribed and administered. The vomiting stopped, but Kasie became lethargic with labored breathing. At approximately 6:00 p.m., according to the child’s mother and grandmother, Kasie ate some soup and received her first insulin dosage for that day. Kasie remained lethargic throughout the evening. At approximately 8:00 p.m., she was administered another Phe-negran suppository. Because her condition did not improve, and she vomited a dark brown material, Kasie was taken to the hospital at approximately 11:00 p.m., according to Havard. The emergency room record reflects the registration time as 12:01 a.m. Notations on the emergency room record reflect that Langley and Havard advised of Kasie’s vomiting and established dosage of insulin twice daily. The emergency room record reflects that the first insulin dosage was administered at 5:00 p.m. Kasie was evaluated, diagnosed and treated in the emergency room until 3:00 a.m. and then transferred to the intensive care unit. Kasie died at 9:20 p.m. on August 29,1991, from diabetic ketoa-cidosis.
Application of Evidentiary Rule
Defendant contends that the trial court improperly applied the evidentiary rule which provides that where there are witnesses of equal credibility and direct contradiction occurs on a fact question, the positive *1181 or affirmative testimony will be given preponderance over that which is negative. Defendant argues that the trial court’s improper application of this evidentiary rule in accepting Havard’s version of the telephone call to the Children’s Clinic over that of Fontenot is “tantamount to an unreasonable evaluation of credibility.”
kiThe trial court recognized that the threshold issue in determining liability was whether Havard did or did not inform the nurse when she called that Kasie was diabetic and had not had her morning dosage of insulin. The trial court correctly noted that this issue was primary since all the physicians who testified indicated that different action would and should have been taken if the prescribing physician knew either or both of these facts.
Defendant contends that the evidentiary rule was improperly applied by the trial court because that rule only applies when a witness’ credibility is not at issue, citing Maroney v. Physicians & Surgeons Hospital, 626 So.2d 833, (La.App. 2 Cir.1993), writ denied, 93-3142 (La.2/11/94); 634 So.2d 376. According to defendant, Havard’s credibility has always been at issue, whereas the credibility of Fontenot has not.
In brief, defendant sets forth various instances in which it contends Havard’s credibility was drawn into question. The trial court’s reasons for judgment indicate a very thorough review of the “testimonial dispute” between Havard and Fontenot. The trial court thoroughly examined and addressed defendant’s allegations seeking to impugn Havard’s credibility on such issues as Ha-vard’s differences as to the time of arrival at the hospital, time of the telephone call to the Children’s Clinic, and other differences with the hospital record. The trial court rejected defendant’s contention that Havard’s testimony was impeached. We find no error in the trial court’s finding in this respect. The trial court found that the differences in time recollections were not significant or unusual, considering Havard’s age. It would also appear that such differences are not significant or unusual considering the facts and circumstances of the events prior to Kasie’s death. We note also that Havard’s testimony that she informed the nurse that Kasie was diabetic and had not had her morning insulin was not inconsistent with her deposition testimony on this point.
fcThe trial court concluded, “[a]ll things considered, the credibility of Catherine and Ms. Fontenot is equal, and Catherine’s positive testimony will be given the preponderance in accordance with the established rule.” We find no error in the trial court’s rejection of defendant’s contention that Havard was not credible. The trial court found otherwise, and Havard’s testimony that she “did” inform the nurse of Kasie’s diabetic condition and the fact that she had not received her morning dosage of insulin was accepted over the defendant’s contention that she “did not” tell the nurse of these facts. Credibility calls are the function and prerogative of the trial court. Holmes v. Int’l Paper Co., 559 So.2d 970 (La.App. 2 Cir.1990); Bruno v. Harbert Int’l., Inc., 593 So.2d 357 (La.1992). The trial court’s finding that a witness is credible is a factual determination not to be disturbed on review absent manifest error. Gonzales v. Babco Farm, Inc., 535 So.2d 822 (La.App. 2 Cir.), writ denied, 536 So.2d 1200 (La.1988).
Thus, defendant’s assignment of error in respect to this issue is without merit.
Allocation of Fault
The Children’s Clinic argues that the trial court erred in failing to assess fault to Kasie’s mother, who was allegedly present and participated in the decision-making process on August 28, 1991, and in failing to assess a greater degree of fault to the child’s grandmother. Defendant argues that the plaintiffs’ responsibility in the treatment of juvenile onset diabetes is to maintain control of blood sugar levels, never withhold insulin doses, and to seek medical attention when symptoms warrant.
The trial court rendered a thorough analysis of fault in its reasons for judgment. The trial court’s findings in this respect are subject to the manifest error standard of review. Rosell v. ESCO, 549 So.2d 840 (La.1989). The record reflects that Catherine |7Havard was Kasie’s legal custodian from the time she was 13 months old until her death. The trial court stated:
*1182 As previously noted, Catherine was the mother in fact of the household. She was the one in authority with respect to Robbie and Kasie, even though Robbie was Kasie’s natural mother. This is noted most pertinently by the fact that on August 28, 1991, after Robbie called home around noon to learn that Kasie was still vomiting she reported this to Catherine obviously for a decision. Robbie did not call the doctor herself. Under these circumstances the court finds that Robbie at all material times was reasonably relying on her mother, Catherine, with respect to the appropriate action to be taken concerning Kasie. This was the pattern established from the time Kasie was thirteen months old when Catherine obtained her legal custody. Under these circumstances the court assigns no percentage of fault to Robbie.
We find no error in the trial court’s failure to assess fault to Langley. Nor do we find any error in the trial court’s assessment of 20% fault to Havard. Defendant contends more fault should have been assessed to Ha-vard. Plaintiffs complain of the trial court’s assessment of any degree of fault to Havard. The trial court’s decision to assess fault to Havard was based on her decision to withhold Kasie’s morning dosage of insulin. The medical evidence adduced reflects that Ka-sie’s insulin should never have been withheld the morning of August 28, 1991, and Havard was unable to refer to any medical advice recommending that insulin be withheld. Furthermore, as the trial court pointed out, Kasie’s blood sugar readings between 5:00 p.m. and 6:00 p.m. should have alerted Ha-vard to seek further medical attention.
Thus, the trial court’s assessment of 20% fault to Havard is affirmed.
Damages
Finally, plaintiffs contend that the trial court erred in awarding: (1) $15,000.00 in survival damages, (2) $10,000.00 for La.Civ. Code art. 2315.6 (bystander) damages to Robbie Langley, and (3) $15,000.00 to Catherine Havard for La.Civ.Code art. 2315.6 damages.
hAs to the amount awarded for survival damages, plaintiffs argue that considering the final 32 hours of Kasie’s life, the award is extremely low as to constitute an abuse of the trial court’s discretion. The trial court found that while Kasie may have suffered a certain level of anxiety, the evidence did not support a finding that the child had a specific fear of death as discussed in cases involving pre-impact fear. We agree with this conclusion. Nevertheless, after reviewing the record, we conclude the lowest amount which could have reasonably been awarded by the trial court is $25,000.00. Following the principles set forth in Coco v. Winston Ind., Inc., 341 So.2d 332 (La.1976), we increase the award for survival damages to $25,000.00.
Plaintiffs also complain that the “bystander” awards under La.Civ.Code art. 2315.6 and the damage award for wrongful death are also excessively low. We agree that the amount of damages awarded to Ha-vard and Langley under art. 2315.6 are so low as to constitute an abuse of discretion. Considering the testimony contained in the record, we conclude that the lowest amount which could have reasonably been awarded for this element of damages is $25,000.00 each to Havard and Langley. We find no abuse of the trial court’s discretion in the damage award for wrongful death.
The judgment of the trial court is amended, and as amended, affirmed. Costs of appeal are assessed one-half to defendant and one-half to plaintiffs.
AFFIRMED, AS AMENDED.